# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA
ex rel JOHN BAX
REGISTER NO. 07328-067

    PETITIONER

RECEIVED

JUN 22 2005

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

    V.

DOCKET No. CA 05-194E

WARDEN, FCI MCKEAN,

    RESPONDENT.

### MEMORANDUM OF LAW IN SUPPORT OF MOTION
### FOR WRIT OF HABEAS CORPUS
### BY PERSON IN FEDERAL CUSTODY

**JOHN BAX,** proceeding pro se, hereby moves this Honorable Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, et. seq., for the following reasons:

1. The conviction was obtained and/or sentence imposed in violation of the Sixth Amendment to the Constitution of the United States.

2. The conviction was obtained and/or sentence imposed in violation of the Fifth Amendment of the Constitution of the United States.

## I. INCORPORATION BY REFERENCE

The facts set forth in the attached Petition for Writ of Habeas Corpus by Person in Federal Custody are incorporated by reference herewith as if set forth at length hereat.

## II. STATEMENT OF THE CASE

On August 2, 1993, a Superseding Indictment from the Federal Grand Jury was filed charging that **between January, 1993 and May, 1993,** in the City of York, York County, PA, John Bax conspired

with Llyod Tucker and with persons known and unknown to manufacture and distribute in excess of 59 grams of cocaine and cocaine base a/k/a "crack" cocaine [COUNT ONE], and that **between January, 1993 and May, 1993,** John Bax manufactured, distributed, and possessed with intent to distribute cocaine and cocaine base, and aided and abetted same.  [COUNT TWO].

On October 4, 1993, the United States Attorney filed an Information charging prior convictions.

On October 12, 1993, following a two day jury trial, John Bax was convicted of the conspiracy charged in Count One, but acquitted of the substantive crime charged in Count Two.

On February 16, 1994, the Honorable William W. Caldwell, using the 1993 Sentencing Guidelines Manual, sentenced Bax to two hundred eighty six (286) months' imprisonment on Count One.  Bax was sentenced using the Career Offender Guidelines USSG 4B1.1 et seq.  The Total Offense Level was 34 which, combined with a Criminal History Category VI, led to a Sentencing Guideline Range of 267-327 months.

On August 18, 1994, the Third Circuit affirmed the judgment of conviction and sentence.  The sole issue was whether the evidence was sufficient to support the conspiracy conviction and sentence.

On February 11, 1997, Bax filed a counseled 2255 Motion alleging the conviction was obtained and sentence imposed in violation of the Fifth and Sixth Amendments to the Constitution of the United States.

With respect to the Fifth Amendment violations, Bax alleged the following defects:

2

(a) the incomprehensible supplemental instruction on conspiracy, which confounded the jury, understated the Government's burden of proof, and amended the indictment to conform to the proof at trial;

(b) failure on the part of the prosecution to correct the false testimony of Kevin Monroe, who had an agreement to exchange his testimony for favorable consideration in his own case but who testfied falsely that he expected nothing in exchange for his testimony against Bax;

(c) materially inaccurate information, and false assumptions were used to classify Bax as a "career offender" and magnify the sentence tenfold using "career offender guidelines" Bax did not have two or more convictions for drug trafficking crimes and/or violent crimes prior to January, 1993, the commencement date of the conspiracy charged in the indictment, and the commencement date established by testimony.  Bax was sentenced as a career offender, as if he had two or more prior convictions.

(d) defects in the repeat offender information, which charged as prior convictions that occurred after the commencement date of the conspiracy.

with respect to the Sixth Amendment violations, Bax alleged that counsel's performance fell below objective professional norms as follows:

(a) failure to object to the indecipherable supplemental instruction on conspiracy;

(b) failure to make an appropriate and timely objection to the

3

career offender classification, and application of the career
offender guidelines.

(c) failure to make an appropriate and timely objection to the
repeat offender information.

(d) failure to request the sentence run concurrent with the ex-
isting state sentence under USSG 5G1.3(b) or 5G1.3(c)[1993].

The 2255 Motion alleged that but for counsel's substandard
representation, there was a reasonable probability Bax-would have
been acquitted, or even if convicted, sentenced to 27 months in-
stead of 286 months.

On March 27, 1997, the Government filed a response opposing
the 2255 Motion.  The prosecution agreed that Kevin Monroe's
testimony was "equivocal" and "ambiguous" but denied that it was
a flat lie.  [Government's Response at page 9].  The prosecution
agreed that the district court judge did not give the pattern
instruction on conspiracy, but disagreed that the instruction was
confu sing, understated the burden of proof, or amended the indict-
ment.  The Government made the argument that Bax was a career of-
fender even though his "prior" convictions occurred. after the com-
mencement date of the conspiracy.

On April 7, 1997, Bax filed a Traverse.

On May 21, 1997, the Government filed a supplemental response,
which included factual material indicating Bax pled guilty to the
career offender predicates on April 7, 1993, two months after the
commencement date of the conspiracy alleging in the indictment.
The Government than made the argument that the convictions were

4

prior offenses because April 7, 1993 was prior to Mid-April 1993, the date Bax allegedly traveled to York, PA to sell drugs.

On May 23, 1997, Judge Caldwell entered an order denying the 2255 Motion.

On September 24, 1997, the Third Circuit denied Petitioner's Application for Certificate of Appealability.

On February 20, 2001, the district court for the Middle District of Pennsylvania denied Bax's motion pursuant to Rule 35(a) and 18 U.S.C. § 3582(c)(1)(A)(i) that motion raised an Apprendi v. New Jersey, 120 S.Ct. 2348 (2000) claim.  The district court directed Bax to petition the Third Circuit for permission to file a Second or Successive 2255 motion.

On April 20, 2001, the Third Circuit denied Petitioner's Section 2244 application in which he sought permission to file a Second or Successive motion in the district court pursuant to 28 U.S.C. § 2255 based on Apprendi v. New Jersey, 120 S.Ct. 2348 (2000).

## III. GOVERNMENT'S VERSION ON THE FACTS

On or about December, 1992, Lloyd Tucker ["Lloyd"], and Arthur Irick ["Gerber"], arived in York, PA and began selling cocaine from 28 E. South Street.  Tucker and Irick sold cocaine continuously until they were arrested on May 28, 1993.  [Government's Response, page 1].  Irick worked for Bax [Government's response, page 2]. Shanika Williams testified that Irick sold drugs supplied by Bax prior to April 1, 1993.  [Tr. 13-14].  Shanika Williams testified she saw Bax dealing drugs prior to April 1, 1993.  [Tr. 15].

Shanika Williams, Tracy Leonard, Ronnie Hill, Velzonnda Gonzalez and Angela Brown testified that Tucker and Irick stored cocaine at 28 E. South Street, and sometimes cooked there.

Tucker's girlfriend, Erica Holmes, testified that Tucker had no job and spent all day on the street near her house which is in an area called the "Jungle."

In April, 1993, John Bax rented a room at the Travel Lodge Motel in York, a short distance from the Jungle. [Government's Response, page 1]. Bax stayed at the Travel Lodge Motel for 41 straight days and always paid in cash. Bax dated Irick's sister, Eleisa. Toll records showed a high volume of calls were made to New York City from rooms rented by Bax and Lectora. Manager John Elliot testified that Bax paid more than $2000.00 in cash towards room charges and sometimes he would not take calls unless the callers knew his name and his room number. [Government's Response, page 1].

On or about May 20, 1993, DEA Special Agent William Miller and others initiated surveillance at the Travel Lodge. Surveillance established that on May 21, 1993, Bax, Tucker and Lectora escorted two women to Trailways Bus Terminal to board a bus bound for New York City, that, on May 25, 1993, Bax, Tucker, and Lectora met the two women at the Trailways Terminal and escorted them to the Travel Lodge, that on May 26, 1993, Irick brought Kevin Monroe to the Travel Lodge to a room rented by Lectora.

On May 27, 1993, Monroe was arrested on a fugitive warrant. He immediately told authorities that he met Irick through a friend,

and that Irick agreed to front him a "G-pack" contigent on approval by John Bax.  Monroe further told authorities that he met Bax in person and that Bax agreed to front him the G-Pack.  Monroe stated he did not receive the G-Pack because he was arrested before he got it.

Carolyn Cobler, a maid at the Travel Lodge, testified she saw Tucker and Bax in the same room, and saw a number of women come and go.  She testified that while cleaning the rooms she found postage stamp size zip lock baggies on the floor, and in trashcans. She also testifed she found powered residue, and with a taste test determined the substance was cocaine.  She testified that she was peering through a window and observed Bax and Lectora bagging what she believed was cocaine.  She testified that she did not see clearly what they were packaging, but based on their actions and her perceptions there was no doubt in her mind that they were packaging cocaine.

Joe Nesbitt testified that he met Bax and Tucker while he was staying at 28 E. South Street following his release from York County Prison on April 1, 1993.  Joe Nesbitt testified that John Bax fronted him 1/4 ounce of crack cocaine once or twice a week. Nesbitt testified that there was one five day period when Bax was not around and Nesbitt instead dealt with Tucker who provided him with 1/4 ounce of crack cocaine for five days in a row.

On May 28, 1993, Bax was arrested as he drove up to the Travel Lodge to pick up Irick and Lectora who had just left Room 214.  At the time of arrest, Bax had a key to Room 214 in his pocket.

7

Authorities searched Room 214 and found a plastic hotel tray with residue of a white, non-narcotic substance on it. DEA Special Agent Miller surmised that the white powder was a cutting agent. Authorities also found a Trailways Bus Ticket from New York to Pennsylvania, 36 postage stamp size zip-loc baggies, rental papers for beepers in the name of Irick and aliases used by Irick, $850.00 in cash in a Reebok sneaker box in the closet. Agent Miller testified that Bax struggled with the authorities in an effort to prevent them from taking his photograph.

Government Exhibits seized April 29, 1993 tested positive for cocaine. There was no evidence in the case regarding the manu-facturing process used to convert the cocaine to cocaine base.

## IV. DEFENSE VERSION OF THE CASE

Petitioner has repeatedly denied he is guilty of the crimes charged in this indictment.

## V. GROUND ONE: THE CONVICTION WAS OBTAINED AND SENTENCE IMPOSED IN VIOLATION OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

## A. THE COURT'S CHARGE ON CONSPIRACY CONFOUNDED THE JURY, AND UNDERSTATED THE GOVERNMENT'S BURDEN OF PROOF

A criminal defendant also is deprived of a fair trial when the charge is hopelessly confusing or unresponsive to the jury's questions. United States v. Fulmer, 108 F.3d 1486 (1st Cir. 1997).

Confused by the original set of instructions, the jury requested clarification of the definition of conspiracy.

Judge Caldwell gave the following supplemental instruction on conspiracy, which speaks for itself.

You must find that: (1) That the defendant that you're considering undertook with another in a sort of partnership to engage in drug dealing, and in order to find a defendant guilty it is not necessary that it be shown that he engaged in the agreement with the other defendant.  It's just that if you're considering defendant A, did he agree with anybody to engage in the conspiracy that is set forth in the indictment, he may have agreed with defendant B, he may have agreed with X or Y, as long as it is the conspiracy which alleges that unknown and unnamed people were part of the conspiracy.  I hope that's not confusing. Okay.  [Transcript of Jury Instructions, at page 20].

The charge is per se reversible error because it is (a) confusing, (b) allows the jury to convict for a conspiracy not charged in the superseding indictment, and (c) understates the Government's burden of proof.

On page 4 of the court's opinion, he says, "While a portion of the charge quoted above, when read in isolation, might appear unclear, when it is placed in context it is apparent the supplemental instruction neither amended the indictment nor understated the burden of proof." [Exhibit "A, page 4].  The Court directs us back to the original charge as proof that the charge was not hopelessly confusing.  [Ex. A, page 4].

The Court combines 0 and 0 and arrives at 1.  The original instruction left the jury in a state of confusion, which is why the jury requested clarification.  The supplemental instruction makes no sense.  Whatever the source of the jury's confusion, combining the original instruction that sparked the confusion with the senseless instruction could not result in a clarification of conspiracy.

Assuming a supplemental instruction defining the crime charged

can never be harmless, this was not.  This was a close case.  Bax was convicted of conspiracy, but acquitted of the substantive count. The evidence against Bax was thin.

The failure to clarify the definition of conspiracy deprived Bax of the right to trial by jury.  See, for example, Harmon v. Marshall, 69 F.3d 963, 965 (9th Cir. 1995) [failure to instruct the jury on each and every element of the offense charged deprives the defendant of his basic right to trial by jury and "vitiated all the jury's findings."]. Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) [same], United States v. Pettigrew, 77 F.3d 1500, 1511 (5th Cir. 1996) [failure to instruct on each and every element of the offense not harmless error because it deprives defendant of right to have facts determined by jury], United States v. Aramony, 88 F.3d 1469 (4th Cir. 1996) [failure to instruct on interstate commerce requirement not subject to harmless error analysis].

**B. KNOWING AND INTENTIONAL USE OF FALSE TESTIMONY BY THE PROSECUTION TEAM TO SECURE A CONVICTION.**

The definition of "knowing use of perjured testimony" is broad enough to include a situation where, as here, the prosecution team o,its facts necessary to make the prosecution witness's testimony not misleading.

In United States v. Turner, 490 F.Supp. 583, 610 (EDMI 1979), affirmed, 633 F.2d 219 (6th Cir. 1980), cert. den. 450 U.S. 912 (1981), for example, the court granted a new trial because the government witness lied when he testified that no promises had been made to him, and the DEA Agent let the lie stand uncorrected.

10

In <u>United States v. Sanchez</u>, 969 F.2d 1409 (2nd Cir. 1992), this circuit stated that a new trial is required where, as here, the prosecutor knowingly uses false testimony and (b) the jury "might" have acquitted absent the perjury.  <u>Id</u>. at page 1414.

In the case at bar, Kevin Monroe was a key prosecution witness Monroe testfied that he was in jail on the federal charge of tampering with a federal witness.  Monroe testfied that "G" promised to connect him with his people.  Monroe testified he met "G" and Bax at the Travel Lodge where Bax agreed to give him a "G-Pac." [Tr. 119].  Monroe also testified he saw "G" and "Lord" together. [Tr. 120].

Monroe testifed that there was no arrangement with the federal government "whereby you'll would get some consideration for that charge because of your cooperation here today." [Tr. 115-116, 125]. Mr. Bax submits this testimony was materially false.  The prosection does not deny there was such an arrangement, but makes the lame excuse that Monroe's testimony was ambiguous and equivocal as opposed to a lie.  The Government's argument closely resembles how many angels can dance on the head of a pin.

When the Government uses perjured testimony, the conviction must be reversed if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. <u>United States v. Stofsky</u>, 527 F.2d 237, 243 (2nd Cir. 1975) citing <u>Napue</u>, <u>supra</u>, <u>United States v. Massac</u>, 867 F.2d 174, 179 (3rd Cir. 1989) [Applying Stofsky to facts of case].

11

Judging by the inconsistent verdicts, there is a reasonable possibility the jury convicted based on Monroe's testimony, reasoning that it must be truthful because Monroe had no reason to lie. That's why it was crucial that the jury be informed that Monroe expected to get something in exchane for his testimony, in this case, Moore expected to have his cooperation brought to the attention of the district court judge in the jury tampering case.

The failure to correct Monroe's testimony deprived John Bax of a fair trial by jury, and warrants reversal.

## C. THE SENTENCE WAS IMPOSED BASED ON MATERIALLY FALSE AND UNTRUE ASSUMPTIONS

Petitioner was incorrectly classified as a Career Offender, and unjustly sentenced under USSG 4B1.1 ("Career Offender Guidelines") which states, "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two felony convictions of either a crime of violence or a controlled substance offense."

USSG 4B1.2(3) states, **"The term "two prior felony convictions" means (A) the defendant committted the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense..."**

Contrary to Judge Caldwell's opinion, the indictment indicates the conspiracy began in January, 1993, and the evience indicates John Bax joined the conspiracy sometime before April 1, 1993.  The

12

convictions described in Paragraphs 37, 38, and 39 of the PSI took place April 7, 1993, so they cannot be "prior." Judge Caldwell's finding of the fact that "defendant's actual participation began when he came to York in mid-April 1993. [Exhibit A, page 8] is clearly erroneous. Again, the indictment charged Bax with conspiracy beginning in January, 1993. The testimony of Shanika Williams indicates that Bax supplied Irick with cocaine before April 1, 1993. Judge Caldwell's artificially atomizes the conspiracy to increase the punishment. United States v. Stoddard, 111 F.3d 1450 (9th Cir. 1997) [government may not subdivide conspiracies to increase punishment], United States v. Cerro, 775 F.2d 908, 913 (7th Cir. 1985).

Sentencing a person as a Career Offender by mistake is a fundamental defect resulting in a complete miscarriage of justice, and is inherently unwaivable. United States v. Maybeck, 23 F.3d 888 (4th Cir. 1994), United States v. Ford, 88 F.3d 1350 (4th Cir. 1996) [sentencing a defendant under the wrong guideline is a fundamental error], Kissick, supra, United States of America vs. George A. Fazekas, Criminal No. 90-118, Civil Action No. 94-1542 (WDPA, 1996, Diamond, C.J.) [2255 granted in part, sentence reduced from thirty years to ten years].

**D. THE EVIDENCE DID NOT SUPPORT PETITIONER'S CONVICTION**

1. By failure to prove quantity charged in indictment.

The indictment specifically charged in Count One that:

> From on or about January 1993 up to an including
> May 1993 in the City of York, York County,
> Pennsylvania, within the Middle District of
> Pennsylvania and elsewhere, the defendants, John
> Bax a/k/a/ Powerful, Lloyd Tucker a/k/a Lord,

> and Keith Lectora intentionally and knowingly
> did combine, conspire, confederate, and agree
> with each other and with persons both known and
> unknown to the grand jury to manufacture, dis-
> tribute, and possess with intent to manufacture
> and distribute <u>in excess of 50 grams of cocaine
> and cocaine base</u>, a/k/a "crack" cocaine, both
> being Schedule II narcotic controlled substances.

(emphasis added).

At the February 16, 1994 sentencing proceeding, Judge Caldwell

made the following finding for sentencing purposes:

> Based on all the information available to me it
> is easy for me to conclude by a preponderance
> of evidence that certainly more than 5 grams of
> crack cocaine was distributed, but until one can
> conclude that 50 or more grams were distributed,
> there is no purpose to be served in attempting to
> determine some quantity in excess of 5 <u>but less
> than 50</u>. So my finding for the purpose of sentencing
> is that the conspirators distributed a quantity well
> in excess of 5 grams, <u>but I cannot determine whether
> the quantity reached or exceeded 50 grams</u>. I believe
> these conclusions place the offense level for both
> defendants at 34 and that where talking about a range
> with a criminal history Category of 6 of 262 to 327
> months.

> (emphasis added).

(Sentencing trans. at pg. 20).  On Count One, the district court

then imposed upon Bax a 286 month sentence.

The indictment charged two distinct offenses in a single count

and courts have held such indictments to be duplications <u>United

States v. Sturdivant</u>, 244 F.3d 71, 79 (2nd Cir. 2001); <u>United

States v. Adesida</u>, 124 F.3d 846, 849 (6th Cir. 1997); <u>United

States v. Buchmeirier</u>, 255 F.3d 415, 423-25 (7th Cir. 2001);

<u>United States v. Nattier</u>, 127 F.3d 655, 658 (8th Cir. 1997);

<u>United States v. Schlie</u>, 122 F.3d 944, 979 (11th Cir. 1997);

<u>United States v. Dees</u>, 215 F.3d 378, 380 (3rd Cir. 2000).

14

Duplicitous indictments obscure the specific charges and may violate the defendant's constitutional right to notice of the charges against him.  Duplicitous indictments may also prevent the jury separately deciding guilt or innocence with respect to each particular offense, thus creating uncertainty as to whether the defendant's conviction was based on a unanimous jury decision. United States v. Adesida, 129 F.3d 849 (6th Cir. 1997); United States v. Shorter, 809 F.2d 54, 58 n.1 (D.C. Cir. 1987); United States v. Smith, 26 F.3d 739, 753 (7th Cir. 1994); United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999); United States v. Baker, 10 F.3d 1374, 1408 (9th Cir. 1993); United States v. Wiles, 102 F.3d 1043, 1061 (10th Cir. 1996).

The Due Process Clause requires the government to prove beyond a reasonable doubt every element of the crime with which a defendant is charged.  (See In re Winship, 397 U.S. 358, 364 (1970)).

The Winship reasonable doubt standard protects three interests. First, it protects the defendant's interest in being free from unjustified loss of liberty.  397 U.S. at 363.  Second, it protects the defendant from the stigaratization resulting from conviction. See Id.  Third, it engenders community confidence in the criminal law by giving concrete substance to the presumption of innocence. See Id. at 363-64.  In this regard, the Court stated that "[i]t is critical that the moral force of the criminal law not be deluded by a standard of proof that leaves people in doubt whether innocent men are being condemmed."  Id. at 364. In his concurring opinion, Judge Harlan noted that the standard is "bottomed on a

15

fundumental value determination of our society that it is far worse
to convict an innocent man than to let a guilty man go free." Id.
at 372.  The Winship requirement applies to elements that disting-
uish a more serious crime from a less serious one.  See also
Apprendi v. New Jersey, 530 U.S. 466, 488-492 (2000) (state must
prove every element that distinguishes a lesser from a greater
offense).

In this case, Count Two of the duplicitous indictment, charging
cocaine and cocaine base, definitely prevented the jury from delib-
erating on guilt or innocence with regard to the two distinct
offenses.  There is no way to know if Bax's conviction was based
on a unanimous jury decision.  Plus the duplitious indictment im-
permissively eased the prosecutor's burden of proof excusing the
government to prove beyond a reasonable doubt every element of the
crimes with which Bax was charged.

   2. By failure to prove conspiracy to distribute cocaine-
      base (crack) charged in indictment

The indictment, in relevant part, charged in count one that
Bax and others "did conspire...and agree with each other...to
manufacture, distribute, and possess with intent to manufacture
and distribute in excess of 50 grams of cocaine and cocaine base,
a/k/a/ crack cocaine..."

As set forth above, Carolyn Cobler, a maid at the Travel
Lodge, testified she saw Tucker and Bax in the same room, and saw
a number of women come and go.  She testified that while cleaning
the rooms she found postage stamp size zip lock baggies on the
floor, and in the trashcans.  She also testified she found powered

residue, and with a taste test determined the substance was cocaine.

As noted above, on May 28, 1993, Bax was arrested as he drove up to the Travel Lodge to pick up Irick and Lectora who had just left room 214. At the time of arrest, Bax had a key to Room 214 in his pocket.

Authorities searched Room 214 and found a plastic hotel tray with the residue of a white, non-narcotic substance on it. DEA Special Agent Miller surmised that the white powder was a cutting agent.

In addition, government exhibits seized on April 29, 1993, tested positive for cocaine. There was no evidence in the case regarding the manufacturing process used to convert the cocaine to cocaine base (aka crack).

The jury found Bax guilty on Count One but their verdict did not clarify whether it rested on conspiracy to distribute cocaine and/or cocaine base (aka crack).

In United States v. Brisbane, 367 F.3d 910 (D.C. Cir. 2004) the Court held that defendant's conviction for distributing five or more grams of cocaine base, which was not supported by sufficient evidence that drugs involved were cocaine base, could be reduced to lesser included offense of distributing cocaine; by convicting defendant of distributing cocaine base, jury necessarily included that drugs involved were some form of cocaine.

The same result reached in Brisbane must be reached in Bax's case. Simply put, the government did not prove that the substance conspired for distribution was smokable and it did not prove it was crack. Bax's conviction for violating §841 therefore cannot stand.

thus, Bax must be resentenced to the lesser included offense, that is, distribution of cocaine.

## VI. GROUND TWO: THE CONVICTION WAS OBTAINED AND SENTENCE IMPOSED IN VIOLATION OF THE SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

### A. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

**1. FAILURE TO REQUEST INSTRUCTIONS.** Trial counsel should have objected to the supplemental instruction misdefining "conspiracy." The failure to do was not part of any rationale trial strategy, and was prejudicial because the evidence against Mr. Bax was underwhelming, heightening the importance of clear and accurate jury instructions. There is a reasonable probability the outcome would have been different had the jury been given clear, and accurate instructions.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

1. Failure to attack the Career Offender enhancement.

Petitioner was misclassified as a Career Offender, and over-sentenced under USSG Section 4B1.1 (Career Offender Guidelines).

Pursuant to <u>United States v. Ford</u>, 88 F.3d 1350 (4th Cir. 1996), "sentencing a defendant as the wrong guideline range seriously affects the fairness, integrity, and public reputation of the judicial proceedings" and must be corrected.

That Guideline states, "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance

offense, and (3) the defendant has at least two felony convictions of either a crime of violence or a controlled substance offense."

USSG 4B1.2(3), which reads in pertinent part as follows: "The term "two prior felony convictions" means (A) the defendant committed the instant offense <u>subsequent</u> <u>to</u> <u>sustaining</u> <u>at</u> <u>least</u> <u>two</u> <u>felony</u> <u>convictions</u> of either a crime of violence or a controlled substance offense."

The convictions described in Paragraphs 37,38, and 39 of the PSI took place after January, 1993, the commencement date of the conspiracy. Because the convictions are not priors, Bax was misclassified as a Career Offender and must be resentenced. <u>United States v. George A. Fazekas,</u> Criminal No. 90-118, Civil Action No. 94-1542 (WDPA, 1996, Diamond, C.J.) [2255 granted in part, sentence reduced from thirty years to ten years].

2. Failure to request concurrent sentences

Defense counsel was ineffective for not requesting that the federal sentence run concurrent with the undischarged 5-10 year New York State sentences. The judge recommended the federal and state sentences run together, but did not order it under USSG 5G1.3(b) or 5G1.3(c). Under the 1993 Guidelines Manual, the judge could have done that and presumably would have had the request been made.

With respect to prejudice, the federal sentence could have been as low as 27 months had counsel been effective..

3. By his failure to move for judgment of qcquittal

At the sentencing proceeding, defense counsel was ineffective

19

for not filing a Rule 29 motion based on insufficiency of the evidence. As noted in Section V, Ground One, the evidence did not support petitioner's conviction because of the government's (1) failure to prove the quantity of narcotics charged in the indictment; and (2) failure to prove conspiracy to distribute cocaine base (crack) charged in the indictment.

First, when Judge Caldwell stated he could not "determine whether the quantity reached or exceeded 50 grams," defense counsel at that point should have immediately moved for a judgment of acquittal, since the indictment quantity for the conspiracy had not been proved by the Court's own findings.

Second, the government's evidence did not support Petitioner's conviction for conspiracy to distribute cocaine base where the government did not prove that substance of conspiracy was smokable and did not prove it was crack. Defense counsel should have moved for a judgment of acquittal after trial based on the evidence of cocaine rather than cocaine base.

Defense counsel should have moved for sentencing on the lesser included offense.

Almost forty years ago the Supreme Court held that the right to effective assistance of counsel extends to sentencing, which is a critical stage of the prosecution for constitutional purposes. Mompa v. Rhay, 389 U.S. 128 (1967).

According to the record in this case, it cannot be found that Bax enjoyed the right to effective assistance of counsel on these two issues noted above.

## V.  THE §2255 MOTION WAS INADEQUATE OR INEFFECTIVE TO TEST THE LEGALITY OF PETITIONER'S DETENTION.

Petitioner is entitled to relief under U.S.C. § 2241 because (a) he did not have a full and fair hearing, and (b) the remedy afforded by § 2255 is no longer the same as the one provided in § 2241 in that the case is referred back to the sentencing judge with a § 2255, but to another judge with a § 2241.  An adverse decision in a § 2255 is not reviewable unless certain criteria are met, but the adverse decision in a § 2241 is reviewable without restriction.

In re Hanserd, 123 F.3d 922, 929 (6th Cir. 1997) states:

> If 'the remedy by [Section 2255] motion is inadequate or ineffective to test the legality of his detention,' then a federal prisoner may apply for a writ of habeas corpus under 28 U.S.C. § 2241, 2244.  28 U.S.C. § 2255.

See also, In re Dorsainvil, 119 F.3d 245 (3rd Cir. 1997), Triestman v. United States, 124 F.3d 361 (2nd Cir. 1997), Koster v. INS, 101 F.3d 785 (1st Cir. 1996).

Petitioner is entitled to a full and fair hearing on the merits before a neutral and impartial judge.

The writ should issue.

John Bax     6/30/05
John Bax
Reg. No. 07328-067
FCI McKean
P.O. Box 8000
Bradford, PA 16707